FILED
07 DEC 26 PM 1:28
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: [illegible] DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Magistrate Case No.: '07 MJ 2982 |
| v. | COMPLAINT FOR VIOLATION OF |
| Benjamin Daniel WILLIAMS (1), Nathaniel Gregory WILLIAMS (2), Defendants. | 21 U.S.C. § 952 and 960 Importation of a Controlled Substance (Felony) |

The undersigned complainant being duly sworn states:

That on or about December 22, 2007, within the Southern District of California, defendants Benjamin Daniel WILLIAMS and Nathaniel Gregory WILLIAMS did knowingly and intentionally import approximately 52.52 kilograms (115.54 pounds) of cocaine a Schedule II Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

[signature]
, Special Agent
Immigration & Customs Enforcement

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 26th, DAY OF December, 2007.

[signature]

UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA
v.
Benjamin Daniel WILLIAMS (1),
Nathaniel Gregory WILLIAMS (2),

PROBABLE CAUSE STATEMENT

I, Special Agent Donald E. Webster, declare under penalty of perjury, the following is true and correct:

On December 22, 2007, Benjamin Daniel WILLIAMS and Nathaniel Gregory WILLIAMS entered the United States through the Calexico, California West Port of Entry. Benjamin WILLIAMS was the driver, and Nathaniel WILLIAMS was the front seat passenger in a 1991 Cadillac Seville, without license plates. Customs and Border Patrol Officer E. Hernandez received a negative Customs declaration. Both subjects stated they were United States citizens and presented their California drivers licenses. Officer Hernandez noted both subjects appeared nervous as they handed their documents to him with hands shaking and the avoidance of eye contact. Both subjects were hesitant to answer basic questions during inspection. Officer Hernandez asked Benjamin WILLIAMS who owned the vehicle and WILLIAMS replied his girlfriend. Officer Hernandez inspected the registration and noted Benjamin WILLIAMS's name was listed as the registered owner. Officer Hernandez decided to refer the vehicle to vehicle secondary for a closer inspection.

In vehicle secondary, Customs Enforcement Officer Randolph and his K-9 "Pina" inspected the vehicle. "Pina" alerted to the vehicle's floorboard area. Officer J. Garcia inspected the floorboard area on the passenger's side of the vehicle and located a non-factory compartment under the passenger seat and dashboard area. The compartment was opened and Officers recovered 47 packages containing a white

powdery substance that field tested positive for cocaine. The combined weight of the 47 packages was 52.52 kilograms, or 115.54 pounds of cocaine.

Both Benjamin and Nathaniel WILLIAMS were arrested in violation of Title 21 United States Code (USC) 952, Importation of a Controlled Substance. Benjamin WILLIAMS acknowledged and waived his Miranda Rights and stated he knew there was something in the vehicle. Benjamin WILLIAMS stated that he and his brother drove to Mexicali B.C. Mexico on December 21, 2007 and stayed at a hotel. He cannot remember the name of the hotel and does not know where it is. He could not say where they went or what they did while at the hotel. Benjamin WILLIAMS stated a friend picked out the hotel but could not provide a name or a description of the friend. Benjamin WILLIAMS finally stated there was no friend involved. He and his brother just drove down to Mexicali, B.C. Mexico from their home in San Diego, CA. and stayed at a hotel.

Agent Webster confronted Benjamin WILLIAMS with his inconsistencies and presented the facts of the case to him indicating that he must have known there was a controlled substance in the vehicle. Benjamin WILLIAMS sated that he thought there was something in the vehicle, but would not elaborate as to what he thought it was.

Agent Webster began asking direct questions as to how and when they arrived in Mexicali, Mexico. Benjamin WILLIAMS stated they drove down on the 21st. Agent Webster asked which vehicle they drove down in because it was a clear fact that they could not have driven the vehicle they were arrested in because of the condition of the non-factory compartment and the very fresh bondo used to seal the compartment. Benjamin WILLIAMS hesitated for a few moments and they requested the right to remain silent.

Agent Webster read Nathaniel WILLIAMS his Miranda Rights in the English language, which he stated he understood and waived. Nathaniel WILLIAMS stated his brother told him on December 20, 2007 that he bought a car and asked for his help in picking it up. They drove down Mexicali, Mexico on December 21, 2007 to pick it up. Agent Webster began asking about the car and Nathaniel stated this was the second time he had seen the car, the first time was approximately two weeks ago. Agent Webster asked Nathaniel how they drove down to Mexico and also why they would drive down to Mexicali, Mexico when they lived in San Diego, CA. Agent Webster also pointed out the lack of credibility in his story since it varied from his brother's version. Nathaniel hesitated and stated he would tell the truth.

Nathaniel stated that his brother asked him to go with him to Mexicali, Mexico to pick up a car he bought. An unknown Mexican guy picked them up from their house at approximately 0700 hours. Nathaniel assumes the guy was a friend of his brothers and did not see or hear anything else because he is not a morning person and slept during the ride to Mexicali, Mexico. When they arrived in Mexicali, Mexico, they stopped at the car. They got out of the small sedan driven by the unknown person and got into the Cadillac they were arrested in. Nathaniel noted the seat did not work properly and did not enjoy the fact that his knees were up against the dashboard. But since it was an older car and his brother obviously liked it, he decided not to say anything. Nathaniel went on to say that he thought it was strange that they would drive all the way to Mexicali, Mexico to get a car, but figured his brother must have gotten a good deal.

Nathaniel states he did not know there was a controlled substance in the vehicle. He also states that his brother has been acting a little different and does not ask him a lot of questions. He just went with him because his brother asked him to. Nathaniel also stated his brother worked at a Subway restaurant but noticed he had not been going to work for the last few days.

Agent Webster asked Nathaniel about a receipt he found in his wallet. The receipt was a withdrawal from a credit card for $4000.00. Nathaniel stated he needed the money to pay on his other credit cards and wanted a little for Christmas. Nathaniel stated he has accrued approximately $10,000.00 in credit card debts and is currently unemployed. He claims that he has a good credit score and gets several offers at low percentage rates. He also claims that he plans on getting a good job and paying off the cards in the near future. He is just being choosy about the type of employment he wants.

Nathaniel stated that neither he nor his brother speak Spanish. In response to questioning, he also stated that this may not have been the same vehicle that he saw his brother with a few weeks ago.

Executed on December 23, 2007 at 1148 hours

Donald E. Webster, SPECIAL AGENT
Immigration and Customs Enforcement

On the basis of the facts presented in the probable cause statement consisting of five (5) pages, I find probable cause to believe that the defendants, Benjamin WILLIAMS and Nathaniel WILLIAMS, named in this probable cause statement committed the offense on December 22, 2007, in violation of Title 21 United States Code, Section(s) 952 & 960

United States Magistrate Judge

12/23/07 - 4:48 Pm
Date/Time